#24684-a-SLZ

**2008 SD 71**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CHARLES E. SISNEY,                                    Plaintiff and Appellant,

　v.

STATE OF SOUTH DAKOTA and CBM
INC. and DOUGLAS WEBER – DIRECTOR
OF PRISON OPERATIONS FOR SOUTH
DAKOTA (in his official and individual
capacities),                                          Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE KATHLEEN K. CALDWELL
Judge

* * * *

CHARLES E. SISNEY
SD State Penitentiary
Sioux Falls, South Dakota                             Pro se plaintiff and appellant.

JEFFREY L. BRATKIEWICZ
MICHELE A. MUNSON of
Woods, Fuller, Shultz & Smith
Sioux Falls, South Dakota                             Attorneys for defendants
                                                      and appellees.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 26, 2008

OPINION FILED **07/23/08**

#24684

ZINTER, Justice

[¶1.] Charles E. Sisney, an inmate in the South Dakota State Penitentiary (SDSP), filed a *pro se* complaint against the State of South Dakota, Douglas Weber, and CBM Inc. (Defendants). Sisney alleged that CBM breached a state contract under which CBM agreed to provide food services to the State at Department of Correction (DOC) facilities. Sisney sought damages for breach of contract as a third-party beneficiary. He also asserted that the alleged breach of contract supported causes of action under 42 USC § 1981 and § 1985. The circuit court dismissed for failure to state claim, concluding that Sisney was not a third-party beneficiary who could enforce a public contract; that the State was immune from suit; and that Sisney failed to assert facts sufficient to proceed on his federal claims. We affirm, finding no third-party beneficiary status and an insufficient pleading to state a claim under § 1981 and § 1985.

I

[¶2.] Sisney pleaded that he is Jewish and follows a kosher diet as a part of his religion. Douglas Weber is the Director of Prison Operations for the State of South Dakota, and CBM is a corporation that provides food services to the State of South Dakota.

[¶3.] In July or August of 2002, the State entered into a contract with CBM to provide food services at DOC facilities, including prisons. Under the contract, the services were to be provided "to the State" in a manner that would meet the needs and concerns of the facilities' residents, inmates and staff. The contract provided that "[t]he proposed menu . . . [was to] have an average caloric base of 2700 to 2500

-1-

calories per day." The contract further provided that "[f]ood substitutions [were to] be available to accommodate food avoidances due to religious beliefs/practices/observances[.]"

[¶4.] In April of 2007, CBM began serving different food at DOC facilities in which prisoners had requested a kosher diet. Sisney filed an administrative grievance through the DOC, claiming that the new kosher diet averaged 400 to 500 fewer calories than the minimum required under the State's contract with CBM. He also alleged that the food did not meet the dictates of his religious beliefs.[1] Weber responded that Sisney's study was incomplete and underestimated the actual caloric content of the meals served. Weber informed Sisney that no action would be taken. Sisney grieved Weber's response. Weber again rejected Sisney's claims, indicating that no further action would be taken on his grievance.

[¶5.] Sisney then brought this suit premising his state and federal claims on allegations that Defendants had "conspired together to cause, permit, and allow a breach of contract to the detriment of [Sisney] because of his religious beliefs; and that this breach of contract resulted in financial gain to the Defendants."[2] Sisney

---

1. Sisney based his grievance on his study of the kosher diet.

2. Sisney's claims were based upon breach of contract. His pleading alleged that the change in food was a . . . :

> Count 1: . . . breach of contract between the State of South Dakota and CBM Inc. in violation of South Dakota Law(s) and Statute(s).

> Count 2: . . . conspiracy by the Defendants to deprive the Plaintiff of the benefits of said contract by breaching and/or allowing said breach of contract in violation of the laws of the United States of America and the State of South Dakota.

claimed standing to sue for breach of contract "because the contract directly affect[ed] him and his well-being."

[¶6.]    Defendants moved to dismiss for failure to state a claim upon which relief could be granted under SDCL 15-6-12(b)(5).  Defendants argued that Sisney's claims were barred by statutory immunity and a lack of standing to assert breach of a public contract between the State and CBM.  Defendants also argued that the complaint did not contain sufficient factual allegations to support Sisney's federal constitutional claim of discrimination and conspiracy under 42 USC § 1981 and § 1985.

[¶7.]    The circuit court granted Defendants' motion.  The court concluded that "[e]ven assuming as true all of [Sisney's] factual allegations contained in the [c]omplaint, it cannot be said that he has standing to assert a breach of contract claim for a contract which he was not a party, and was not a third-party beneficiary."  Regarding Sisney's § 1981 claim, the court concluded that the "pleadings are bare as to any allegation of discrimination of the sort covered by § 1981."  Regarding Sisney's § 1985 claim, the court concluded that even "taking into consideration the fact that Plaintiff is pro se, and relaxing the requirement properly pleading a [§] 1985 claim, it cannot be said that Plaintiff has asserted a [§] 1985 [conspiracy] claim upon which relief can be granted."  Sisney now appeals the dismissal and the denial of an opportunity to amend his pleadings.

II

[¶8.] A motion to dismiss tests the legal sufficiency of the pleading, and therefore, we review the grant of a motion to dismiss de novo. Elkjer v. City of Rapid City, 2005 SD 45, ¶6, 695 NW2d 235, 239. "While a complaint attacked by a Rule 12(b)(5) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Sisney v. Best, 2008 SD 70, ¶7, __ NW2d __ (quoting Bell Atlantic Corp. v. Twombly, __ US __, 127 SCt 1955, 1964-65, 167 LEd2d 929 (2007) (internal citations omitted). The rules "contemplate[ ] [a] statement of circumstances, occurrences, and events in support of the claim presented." Best, ¶7, __ NW2d at __ (quoting Bell Atlantic, __ US at __, 127 SCt at 1965 n3) (quoting 5 Wright & Miller Federal Practice and Procedure: Civil 3d § 1202, at 94). Ultimately, the complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. Bell Atlantic, __US at __, 127 SCt at 1965. Furthermore, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)([5]) is appropriate." Benton v. Merrill Lynch & Co. Inc., 524 F3d 866, 870 (8thCir 2008).

III

[¶9.] Sisney asserts that he has standing to sue for breach of the State's contract with CBM, arguing that he is a third-party beneficiary of that contract. This assertion underlies both the state and federal causes of action.

[¶10.]    SDCL 53-2-6 governs the right to enforce a contract as a third-party beneficiary.  The statute provides, "[a] contract made *expressly* for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."  SDCL 53-2-6 (emphasis added).  This does not, however, entitle every person who received some benefit from the contract to enforce it.  As this Court stated in *Thompson Yards v. Van Nice*, 59 SD 306, 308, 239 NW 753, 755 (1931):

> The [third-party beneficiary] statute is not applicable to every contract made by one person with another for the performance of which a third person will derive a benefit; the intent to make the contract inure to the benefit of a third party must be clearly manifested.  In the language of the statute, the contract must be on "made expressly for the benefit of a third person."

(Citations omitted.)  *See also* Trouten v. Heritage Mut. Ins. Co., 2001 SD 106, ¶13, 632 NW2d 856, 858; Kary v. Kary, 318 NW2d 334, 336 (SD 1982); Fry v. Ausman, 29 SD 30, 135 NW 708, 710 (1912).  Thus, the rule requires that *at the time the contract was executed*, it was the contracting parties' intent to *expressly* benefit the third party.  And, even then, not all beneficiaries qualify: incidental beneficiaries are not entitled to third-party beneficiary status.  North Dakota, in construing language similar to SDCL 53-2-6, explained that even "the mention of one's name in an agreement does not give rise to a right to sue for enforcement of the agreement where that person is only incidentally benefited."  First Fed. Sav. & Loan Ass'n of Bismarck v. Compass Inv. Inc., 342 NW2d 214, 218 (ND 1983).  The party claiming third-party beneficiary status must show "that the contract was entered into by the parties directly and primarily for his benefit."  Mercado v. Mitchel, 83 Wis2d 17, 28, 264 NW2d 532, 538 (Wis 1978).  "The benefit must be more than merely incidental to the agreement."  *Id.*

[¶11.]    "Government contracts . . . pose unique difficulties in the area of third-party beneficiary rights because, to some extent, every member of the public is directly or indirectly intended to benefit from such a contract."  Clifton v. Suburban Cable TV Co. Inc., 434 PaSuper 139, 144, 642 A2d 512, 515 (PaSuperCt 1994).  Therefore, as a general rule, a private party who contracts with the public government entity does not open itself to liability at the hands of the public.  Restatement (Second) of Contracts § 302 (1981).  A private third-party right of enforcement is not properly inferred because of the potential burden that expanded liability would impose.  *See id.*  The right of enforcement in public contracts can only arise from the plain and clear language of the contract.  *See id.*  Consequently, when a public contract is involved, private citizens are presumed not to be third-party beneficiaries.  Drummond v. Univ. of Pa., 651 A2d 572, 578-79 (PaCommwCt 1994).  The Pennsylvania court observed that "[t]here must be language evincing an intent that the party contracting with the government will be liable to third parties in the event of nonperformance."  *Id.* at 579.

[¶12.]    Under these rules, it is generally held that inmates lack standing to enforce public contracts.  *Clifton*, 642 A2d at 514.  *See also* Gay v. Ga. Dep't of Corrections, 606 SE2d 53, 57-59 (GaCtApp 2004)[3] (stating, "the mere fact that the

---

3.    Sisney argues that the rationale of *Clifton* and *Gay* is inapplicable because the contracts in those cases contained clauses that specifically provided only the State could enforce the contract.  This distinction is irrelevant, however, because both cases were decided on the basis that, similar to Sisney's case, there was no indication or language in the contracts that clearly expressed the signatory parties' intent to benefit the specific inmates at issue:  they were only incidentally benefited, and therefore they lacked standing.  *Clifton*, 642 A2d at 512; *Gay*, 606 SE2d at 53.

[third party] would benefit from performance of the agreement is not alone sufficient" to render that party a third-party beneficiary). The rationale underlying these decisions is that public contracts are intended to benefit everyone, and therefore, the inmate's benefit is only incidental to the contract.

[¶13.]     In this case, the contract was a public contract between the State of South Dakota and CBM, and the contract did not expressly indicate that it was intended for Sisney's direct benefit or enforcement. On the contrary, the contract reflects that it was made for the express benefit of the State, and the collective benefit that inmates may have received was only incidental to that of the State. Sisney concedes as much, indicating that his relationship with the contract involved a mere "benevolent nexus between the promisee [State] and the beneficiary [Sisney]." Brief of Appellant at 12.

[¶14.]     Nevertheless, Sisney argues that because the contract provided that "[t]he contractor shall describe the complaint resolution process in place for addressing complaints," Sisney possessed a right of enforcement. Sisney, however, conceded that the complaint resolution mechanism is a general administrative remedy: *See* SDDOC Policy 1.3.E.2. Because this remedy is a general institutional remedy provided to all inmates to address numerous confinement complaints, and because that remedy is provided independent of the State's food service contract with CBM, the contract's reference to that policy does not confer contractual third-party beneficiary status on Sisney to *enforce* the contract.

[¶15.]     Because Sisney did not have standing to sue under this public contract, and because all of Sisney's claims are dependent upon his right to sue for breach of

the contract, we need not discuss the issue of immunity. For the same reason, we

need not extensively discuss Sisney's federal claims.[4]

---

4.      We note, however, that the purpose of 42 USC § 1981 is to prohibit discrimination in the making or enforcement of contracts on the basis of race. Georgia v. Rachel, 384 US 780, 792, 86 SCt 1783, 16 LEd2d 925 (1996). Discrimination based upon sex, age, or religion does not provide a cause of action under § 1981. Runyon v. McCrary, 427 US 160, 96 SCt 2586, 49 LEd2d 415 (1976). Therefore, in order for Sisney to state a claim upon § 1981, he must have pleaded that he was deprived of a right that, under similar circumstances, would have been accorded a person of a different race. Schetter v. Heim, 300 FSupp 1070, 1073 (EDWis 1969). Sisney did not, however, allege that he was denied the benefit of the contract because of his race. Rather, he alleged that Defendants "allow[ed] the breach of contract to the detriment of Plaintiff because of his religious beliefs[.]" Complaint ¶20.

Sisney's § 1985(3) claim also fails. "Civil rights pleadings are construed liberally[, but] they must not be conclusory and must set forth facts which state a claim as a matter of law." Davis v. Hall, 992 F2d 151,152 (8th Cir 1993). The "allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" Deck v. Leftridge, 771 F2d 1168, 1170 (8thCir 1985) (citation omitted). Therefore, Sisney was required to "at least allege that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding, and provide some facts suggesting such a 'meeting of the minds.'" *Id*. (citation omitted). *See also* Rogers v. Bruntrager, 841 F2d 853, 856 (8th Cir 1988) (providing that a conspiracy claim requires allegations of specific facts showing "meeting of minds" among alleged conspirators).

In this case, Sisney only alleged that Defendants "conspired to cause, permit, and allow a breach of contract to the detriment of the Plaintiff because of his religious beliefs; and that this breach of contract resulted in financial gain for Defendants." Complaint, ¶20. This is the type of allegation that the Supreme Court specifically prohibited in *Bell Atlantic*, stating that the federal counterpart to Rule 12(b)(5) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented." __ US at __, 127 SCt at 1965 n3 (quoting 5 Wright & Miller Federal Practice and Procedure: Civil 3d § 1202, at 94). Here, Sisney did no more than use the word "conspire," while failing to allege one fact suggesting a meeting of the minds, when an agreement was reached, or who was involved. Therefore, his complaint was without "sufficient specificity and factual support." *Deck*, 771 F2d at 1170.

IV

[¶16.]     Sisney argues that the circuit court abused its discretion by failing to give him an opportunity to amend his complaint in order to cure any pleading deficiencies.  A circuit court's decision regarding amendment of the pleadings "will not be disturbed on appeal unless there is a clear abuse of discretion which results in prejudice[.]" *In re* T.A., 2003 SD 56, ¶38, 633 NW2d 225, 237.  In this case, Sisney only generally raised the issue of amendment in a brief resisting dismissal.  He did not file a motion, nor did he explain what new, specific factual allegations would have overcome the defects requiring dismissal.  For these reasons, the circuit court did not abuse its discretion in declining to make, schedule, and grant (essentially *sua sponte*) a motion allowing amendment of the complaint.

[¶17.]     We affirm the circuit court's dismissal of Sisney's complaint.

[¶18.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.